## Court of Appeals.

January 17, 1893.

### PEOPLE v. JAMES L. HAMILTON.

(50 St. Rep. 22; 137 N. Y. 531.)

Evidence—Circumstantial.

> The evidence, in this case, though circumstantial, was held to be of the most satisfactory and conclusive character and to demon-

strate to a moral certainty that the crime charged in the indict-
ment was committed and that the defendant was the author of it.

Appeal from judgment of the Queens county oyer and ter-
miner, convicting defendant of the crime of murder in the first
degree.

John J. Trapp, for appellant.

John Fleming, district attorney, for respondents.

PER CURIAM.—We fail to discover in this record any suffi-
cient grounds for a reversal of the conviction. The verdict in
our judgment, was not against the weight of evidence, or
against law, nor does justice require that a new trial shall be
had. § 528, Crim. Code. The minutes are exceptionally free
from errors. The defendant was accorded every right and
privilege to which an accused person is entitled under the law,
and the only point relied upon by the learned counsel for the de-
fendant at the argument was the inadequacy of the proofs to
support a judgment where the forfeiture of a human life must
be the penalty of its enforcement.

We have given the testimony a careful perusal, and are unable
to perceive any inherent or fatal weakness in it. Although cir-
cumstantial, it is of the most satisfactory and conclusive char-
acter, and demonstrates, we think, to a moral certainty, that
the crime charged in the indictment was committed, and that
the defendant was the author of it.

The murdered woman was the defendant's wife, and was
found upon the morning of May 2, 1892, in the edge of a small
pond about six hundred feet from the station on the Long Is-
land Railroad at Winfield. The body was rigid, and had been
dead several hours, unquestionably since the previous evening.
The throat was cut from ear to ear. Both carotid arteries, both
jugular veins, both pneumo-gastric nerves and all the tissues
from the anterior artery to the vertebral column, including the
larynx, had been completely severed, so that the head was at-
tached to the body only by means of the vertebrae of the spine.
There were plain indications that the weapon had been twice
applied. The deceased was a woman of slight physique, weigh-

ing not more than one hundred pounds, and was then in an advanced stage of pregnancy. The nature of the wound was such that it might be regarded as incredible that it could have been self-inflicted. It was plain that a homicide had been committed, and there were two concurring but independent lines of proof, either of which, if believed by the jury, was sufficient to charge the defendant with the responsibility for its commission. Both he and his wife had been living at Flushing, six miles distant from Winfield. He was in the employ of the railroad company as a gateman, and was boarding at a private house in the village, while she was a servant in another family. When last seen, according to the proof, she was leaving the station at Winfield in company with a man whose description was that of the defendant at about 8.20 in the evening of May 1st and shortly after the arrival of a train which passed Flushing a few minutes after eight. Defendant was absent from his boarding place from about seven fifty to nine fifty that evening, and if during that time he went down to Winfield and was the person who started from the station there with his wife towards the place where her body was found, and it must be conceded that there can be no doubt of his guilt. Aside from the evidence of two women who saw the deceased go from the station in the company of a man they did not know, but who had the appearance of the defendant, it was shown by the testimony of a police officer of Flushing that the defendant went towards the depot with his wife about the time the eight o'clock train left; by the conductor that he was on the train and had a ticket for Winfield; and by the brakeman that he was on the train and got off at Winfield, and by the doorman at Winfield that the wife was also on the train and stopped there. These witnesses all appear, from their examination, to be intelligent men; their testimony is given in a clear, direct and positive manner; it is not shaken upon cross-examination; and they seem to be devoid of all feeling or prejudice against the defendant. Each saw him from a different point of observation; was personally well acquainted with him; he was dressed in a manner to attract some attention, and it is, at least, highly improbable that all three were mistaken. Opposed to this array of proof the de-

fendant asserts an alibi, and insists that during the two hours in question he remained in Flushing, mainly upon the public streets, and, with a single exception, no man is produced who saw him during that time. He says that he went into the house of a friend and called to the family who were upstairs, but no one heard him; that he went into a church where services were being held and remained some time, but no one saw him to identify him, although there were several persons in the church who knew him. But one witness claims to have seen him during this time, about half past eight o'clock, but his evidence is not clear, and he may have been mistaken as to the exact time. In its entirety, the proof of the alleged alibi was weak, incongruous and improbable, and entirely insufficient to impair the force of the direct and positive testimony of the five witnesses who saw him on his way to Winfield and while there.

There was another species of evidence which may properly have had equal weight in establishing the defendant's guilt.

There was found near the body of the murdered woman a razor, a cuff button and a broken cane. · If these articles were the property of the defendant, they furnished very strong evidence that he was present at the time of the murder and participated in it. It is very clear from the testimony that they all belonged to him, or were in his possession just before the homicide occurred. The button matched an odd one found in his room; all his shaving utensils were at his boarding house, except the razor, which, he claimed, was at the place where he worked, on the railroad, only a few miles away, but which he did not produce, and apparently made no effort to produce it. He admitted he had the cane, or one just like it, on the evening of the murder, but claimed that it was mysteriously taken from his hand while standing on the sidewalk at Flushing, by some one hurriedly passing by, who immediately disappeared, and was not seen or heard of afterwards; but to a witness for the People he stated that he loaned the cane to his wife to walk with, because she was lame from rheumatism. The defendant evidently appreciated the force of these damaging facts, but his explanation of them was so unreasonable and improbable that it may have discredited his entire defense in the minds of the jury.

The People's case was fortified by very convincing proof of a

strong motive. Defendant's marriage had proved uncongenial and irksome. He had no affection for his wife; was not desirous of her companionship; treated her with contempt; did not live in the same household with her; was constantly upbraiding her, and accused her of infidelity, which he alleged as a reason for seeking a divorce, which was not obtained. From some passages in his correspondence it is probable that the real grounds of his dislike for her had reference more to the gratification of his passions than to any want of virtue in her. She had three times procured his arrest on the charge of abandonment; and it is evident that he had become possessed of an absorbing desire to be free from her, and no way seemed to be open, except by means of her death.

Deliberation and premeditation were also proven. It may fairly be inferred that the wife was induced to go to Winfield upon the pretext that he intended to go to housekeeping with her there and for the purpose of looking at the house which he proposed to rent; they occupied separate coaches upon the train so that he might not be seen in her company; he did not go into the station with her, but waited outside until she joined him, which all indicated that he had some secret purpose for avoiding observation; and he took with him the razor with which the fatal wound was inflicted. He also produced a letter which he claimed his wife had left under his pillow with a bottle of poison, when they stopped over night in New York on one occasion, which purported to contain a confession of infidelity on her part, and indicated a frame of mind which contemplated self-destruction. It was shown that the letter was not in her handwriting, and it might properly be argued that it was fabricated by the defendant and was intended to support the theory of suicide in case of her death by violence, and that the razor was left near the body for the purpose of sustaining a claim of this kind.

We have thus recounted the principal facts proven in this case. There were many other circumstances pointing in the same direction, all of which are in our judgment inconsistent with any other hypothesis than that of the guilt of the defendant; and in discharging the duty imposed upon us by the legislature, which requires a review of the facts by this court as well as the law in capital cases, we are constrained to concur in the

statement of the learned trial judge, when passing sentence, that on the evidence adduced in this case it was impossible for any mind with any degree of intelligence to doubt as to the defendant's guilt.

The judgment of conviction must be affirmed.

All concur.